IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

JEROME WYCKOFF,

    Petitioner,

    v.

WARDEN, BELMONT CORRECTIONAL INSTITUTION,

    Respondent.

CASE NO. 2:20-CV-5580
CHIEF JUDGE ALGENON L. MARBLEY
Chief Magistrate Judge Elizabeth P. Deavers

## ORDER AND
## REPORT AND RECOMMENDATION

Petitioner, a state prisoner, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 and § 2241.  This matter is before the Court on the Petition, Respondent's Motion to Dismiss, Petitioner's Response in Opposition, and the exhibits of the parties.  For the reasons that follow, it is **RECOMMENDED** that the Motion to Dismiss (ECF No. 7) be **DENIED,** and that this action be **DISMISSED**.

Petitioner's motion for leave to file a Traverse and request for judicial notice of his state court filings (ECF Nos. 9, 10) are **GRANTED**.

### I.    BACKGROUND

Petitioner seeks release from his continued incarceration as unconstitutionally imposed due to the health risks he faces in prison from the COVID-19 pandemic.  Petitioner is presently serving a term of 7 years' incarceration pursuant to his August 2018 guilty plea in the Stark County Court of Common Pleas for various drug offenses.  Petitioner does not now challenge this underlying criminal conviction and apparently did not do so in the Ohio courts.  He indicates that he has filed grievances within the prison system and a motion for judicial release under

O.R.C. § 2929.20(N). He complains that the State of Ohio provides no adequate remedy to pursue relief on his claim that he is unconstitutionally incarcerated due to the impact of COVID-19 on prison facilities and in view of his health issues. He asserts that his continued incarceration violates due process and the Eighth Amendment because the prison cannot implement adequate social distancing and has failed to provide inmates with N-95 masks and inmates refuse to wear masks appropriately. He indicates that he suffers from COPD, prior pneumonia, blood clots, and obesity, and takes heart medication. Petitioner complains that he has been exposed to another COVID positive inmate. He seeks immediate release. (*Petition*, ECF No. 3, PAGEID # 67.) It is the Respondent's position that Petitioner's claim is not cognizable in habeas corpus proceedings under either 28 U.S.C. § 2254 or § 2241 and, alternatively, that Petitioner has failed to exhaust state court remedies.

## II. MOTION TO DISMISS

### a. Propriety of Habeas Corpus

Respondent argues at length that Petitioner's claim should be dismissed as not cognizable in habeas corpus proceedings because it involves a conditions of confinement claim that must be brought, if at all, in an action under 42 U.S.C. § 1983. Respondent acknowledges that the Sixth Circuit held in *Wilson v. Williams,* 961 F.3d 829, 838 (6th Cir. 2020) that prisoners seeking immediate release under the Eighth Amendment based on the health impact of COVID-19 may pursue relief under the provision of 28 U.S.C. § 2241, but argues that *Wilson* does not apply to state prisoners. Respondent argues that *Cameron v. Bouchard*, 815 F. App'x 978, 983 n. 1 (6th Cir. July 9, 2020), permitting pre-trial detainees and state prisoners to proceed on COVID-19 claim under § 2241 (citing *Wilson*), likewise does not apply, because *Cameron* involved an action filed under both 42 U.S.C. § 1983 and 28 U.S.C. § 2241. *See id*. at 980. Respondent

refers to *Bradley v. Shoop,* No. 2:20-cv-3897, 2021 WL 688859 (6th Cir. Jan. 8, 2021) (denying the request for a certificate of appealability), other federal district court cases from other states noting the disagreement among federal courts on the issue, and cases from the Sixth Circuit prior to *Wilson* and not involving COVID-19 claims in support.

This Court is not persuaded by Respondent's arguments. The Sixth Circuit in *Wilson* held as follows:

> [W]here a petitioner claims that no set of conditions would be constitutionally sufficient the claim should be construed as challenging the fact or extent, rather than the conditions, of the confinement. *See Adams v. Bradshaw*, 644 F.3d 481, 483 (6th Cir. 2011); *cf. Terrell v. United States,* 564 F.3d 442, 446−48 (6th Cir. 2009). The Supreme Court has held that release from confinement—the remedy petitioners seek here—is "the heart of habeas corpus." *Preiser v. Rodriguez*, 411 U.S. 475, 498, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973).
>
> The BOP's attempts to classify petitioners' claims as "conditions of confinement" claims, subject to the PLRA, are unavailing. . . .
>
> Petitioners here [] contend that the constitutional violations occurring at Elkton as a result of the pandemic can be remedied only by release. The BOP's framing of the requested relief as seeking transfer or improvement to the BOP's COVID-19 response procedures overlooks the fact that petitioners in the subclass seek release. Because petitioners seek release from confinement, "the heart of habeas corpus," *Preiser,* 411 U.S. at 498, 93 S.Ct. 1827, jurisdiction is proper under § 2241.

*Id*. at 838. This Court is bound by that decision.

The Sixth Circuit noted in *Cameron* that Respondent's argument that no cognizable habeas claim had been presented was "inconsistent" with the holding in *Wilson,* but declined to address this non-jurisdictional procedural issue, instead denying the claim on the merits. *Cameron*, 815 F.App'x at 983 n.1. Moreover, this Court previously has rejected Respondent's argument, s*ee Horner v. Warden, Belmont Corr. Inst.,* No. 2:20-cv-6118, 2021 WL 540057, at *1 (S.D. Ohio Jan. 8, 2021) ("Where the petitioner requests immediate release from confinement, his claim may properly be addressed in a petition for a writ of habeas corpus.") (citations

omitted); *Aultman v. Shoop*, No. 2:20-cv-3304, 2020 WL 4287535, at *1 (S.D. Ohio July 27, 2020) (Plaintiff's request for immediate release from custody fails to state a claim under 42 U.S.C. § 1983 and must be brought under the provision of 28 U.S.C. § 2241) (citing *Wilson,* 961 F.3d at 838); *Gerald v. Warden, Lebanon Corr. Inst.*, No. 1:20-cv-603, 2020 WL 8370958, at * 2 (S.D. Ohio Aug. 27, 2020) (concluding that state prisoners' COVID-19 claims may properly be brought under the provision of 28 U.S.C. § 2241) (citing *Van Diver v. Nagy*, No. 20-11340, 2020 WL 4696598, at *2 (E.D. Mich. Aug. 13, 2020) (other citations omitted)) as have other federal district courts in the Sixth Circuit*, see Blackburn v. Noble*, 479 F.Supp.3d 531, -- (E.D. Ky. 2020) (the provision of 28 U.S.C. § 2241 provides avenue of relief for state prisoners seeking immediate release based on COVID-19) (citing *Wilson*, 961 F.3d at 838; *Malam v. Adducci,* 452 F.Supp.3d 643, 649 (E.D. Mich. 2020)); *but see Jaeger v. Wainwright*, No. 1:19-cv-2853, 2020 WL 3961962, at *3 (N.D. Ohio July 7, 13, 2020) (and cases cited therein) (holding that a habeas action by state prisoners bringing COVID-19 claim must be brought under the provision of 28 U.S.C. § 2254 ) (citations omitted).

*Bradley*, referred to by the Respondent, does not hold to the contrary. The Sixth Circuit in *Bradley* the petitioner's request for a certificate of appealability from the dismissal of a habeas corpus petition filed under the provision of 28 U.S.C. § 2254 raising a COVID-19 claim, declining to construe the action under 28 U.S.C. § 2241:

> True, the Sixth Circuit recently permitted federal inmates to bring a claim similar to Bradley's under 28 U.S.C. § 2241. *See Wilson v. Williams*, 961 F.3d 829, 838-39 (6th Cir. 2020). But Bradley petitioned under 28 U.S.C. § 2254, not 28 U.S.C. § 2241, and "our interpretation of § 2241 does not control our interpretation of § 2254." *Bailey v. Wainwright*, 951 F.3d 343, 347 (6th Cir. 2020). Nor does anything require "courts to convert § 2254 petitions to petitions under § 2241[.]" *Allen v. White*, 185 F. App'x 487, 489 (6th Cir. 2006).

4

*Bradley*, 2021 WL 688859, at *2. Thus, *Bradley* does not stand for the proposition that Petitioner's claim cannot be brought in a petition for habeas corpus relief under the provision of 28 U.S.C. § 2241.

### b. Exhaustion

Respondent alternatively argues that the Court should dismiss this action as unexhausted because Petitioner has failed to pursue appropriate state court relief. Respondent does not indicate, however, the appropriate means by which Petitioner should present his claim to the state courts.

"Before a prisoner may seek habeas corpus relief under § 2241, he must first exhaust his administrative remedies[.]" *Melchor v. Williams*, No. 4:20-cv-1022, 2020 WL 4558458, at *1 (N.D. Ohio June 12, 2020) (citing *Settle v. Bureau of Prisons*, No. 16-5279, 2017 WL 8159227, at *2 (6th Cir. Sept. 20, 2017)); *see also Walker v. Warden, Warren Corr. Inst.*, No. 1:20-cv-302, 2020 WL 6392463, at *2 (citing *Medina v. Williams*, 823 F. App'x 676–77 (10th Cir. 2020) (noting that the dismissal of a prisoner's COVID-19 claims brought under § 2241 was proper because the petitioner failed to demonstrate that he has exhausted his available state remedies); *Elleby v. Smith*, No. 20-cv-2935, 2020 WL2611921, at *4 (S.D.N.Y. May 22, 2020) (joining federal district courts around the country that have recently dismissed, or held dismissible, COVID-19-related petitions for failure to exhaust state remedies) (collecting cases); *Malloy v. Dist. Attorney of Montgomery Cty.*, No. 20-1804, 461 F.Supp.3d 168, 2020 WL 2571170, at *3 (E.D. Pa. May 21, 2020) (dismissing COVID-19 habeas petition for failure to exhaust, finding the "[p]etition contains no suggestion that Petitioner has attempted to exhaust the state court process through emergency motion or petition to the state trial or appellate courts"); *Griffin v. Cook*, No. 3:20-cv-589, 2020 WL 2735886, at *5 (D. Conn. May 26, 2020) (dismissing COVID-

19 petition for lack of exhaustion); *Resch v. Rewerts*, No. 1:20-cv-515, 2020 WL 3396625, at *4 (W.D. Mich. June 19, 2020) (same)).

Petitioner states that he has presented his claim to the Ohio Supreme Court in a state habeas corpus action and in a motion for judicial release in the state trial court. Petitioner also indicates that he has filed a grievance within the prison system. He has attached a copy of the grievance and habeas corpus petition he filed in the Ohio Supreme Court. (*See motion for leave to file a Traverse and Motion to Take Judicial Notice*, ECF No. 9, PAGEID # 175, 177-184.) On February 2, 2021, the Ohio Supreme Court *sua sponte* dismissed the habeas corpus petition. *Wyckoff v. Gray*, 161 Ohio St.3d 1419 (Ohio 2021).

*Smith v. DeWine,* 476 F.Supp.3d 635, 655 (S.D. Ohio Aug. 3, 2020), outlines the procedure for exhausting administrative remedies on a COVID-19 claim through the prison grievance procedure in an action filed under 42 U.S.C. § 1983:

> Ohio has established a procedure for resolving inmate complaints. Ohio Admin. Code § 5120-9-31. To properly exhaust a claim seeking relief "regarding any aspect of institutional life that directly and personally affects the [inmate]," an inmate at an ODRC facility must comply with its three-step grievance system. *Id.* For the first step, the inmate must submit an informal complaint to the staff member or to the direct supervisor of the staff member or to the department most directly responsible over the subject matter with which the inmate is concerned. Id. § 5120-9-31(K)(1). If the inmate is not satisfied with the results at the first step, he may take the second step by filing a formal grievance with the inspector of institutional services at the prison where he is confined. *Id*. § 5120-9-31(K)(2). That inspector will investigate the matter and issue a written response to the inmate's grievance within fourteen calendar days of receipt. *Id*. If the inmate is still dissatisfied, he may pursue the third step, which is an appeal to the office of the Chief Inspector of [the] ODRC. *Id*. § 5120-9-31(K)(3). An inmate does not exhaust his remedies under § 5120-9-31 until he has received a decision in an appeal to the office of the Chief Inspector. *Younker v. Ohio State Univ. Med. Ctr*., No. 2:11-cv-00749, 2013 WL 3222902, at *3, 2013 U.S. Dist. LEXIS 88963, at *4 (S.D. Ohio June 25, 2013).

*Id*. at 655.

Federal courts have been divided on whether the exhaustion requirement should apply to COVID-19 Eighth Amendment prison claims in view of the potential danger of the virus and the time sensitive nature of the claim:

> In light of the COVID-19 pandemic, federal courts are split on the issue of whether administrative remedies are currently available to prisoners. Some courts have considered the irreparable harm and time-sensitive nature prisoners face in light of the virus and find grievance procedures unavailable and thus, exhaustion not required. *See e.g., Sowell v. TDCJ,* No. H-20-1492, 2020 WL 2113603, at *3, 2020 U.S. Dist. LEXIS 77809, at *7 (S.D. Tex. May 4, 2020) ("Where the circumstances present an imminent danger to an inmate, TDCJ's time-consuming administrative procedure, which TDCJ may choose to extend at will, presents no 'possibility of some relief.' " (citing *Ross,* 136 S. Ct. at 1859)); *United States v. Vence-Small*, No. 3:18-cr-00031, —— F.Supp.3d ——, ——, 2020 WL 1921590, at *5, 2020 U.S. Dist. LEXIS 69354, at *12–13 (D. Conn. Apr. 20, 2020) ("In light of these emergency circumstances, some judges have [waived exhaustion requirements,]") (citing *United States v. Russo*, 454 F.Supp.3d 270, 272–74 (S.D.N.Y. 2020) and *United States v. Haney*, 454 F.Supp.3d 316, 2020 WL 1821988, at *1-2 (S.D.N.Y. 2020)).

*Id*. at 656.

However, a federal court may dismiss an unexhausted claim on the merits. 28 U.S.C. § 2254(b)(2); *see Cameron,* 815 F. App'x at 983 n.1 (declining to address non-jurisdictional procedural issues where claim fails on the merits).

> [T]he failure to exhaust does not divest this Court of jurisdiction over their petition. *Rockwell v. Yukins*, 217 F.3d 421, 423 (6th Cir. 2000). A federal habeas court may consider unexhausted claims where "'unusual' or 'exceptional' circumstances" exist. *Id*. (quoting *O'Guinn v. Dutton*, 88 F.3d 1409, 1412 (6th Cir. 1996) (citing *Granberry v. Greer*, 481 U.S. 129, 107 S.Ct. 1671, 95 L.Ed.2d 119 (1987))). As other Courts have observed, the current pandemic is an unusual or exceptional circumstance that could allow a federal court to consider the matter at hand. *Cameron v. Bouchard*, —— F.Supp.3d ——, ——, 2020 WL 2569868, at * 15 (E.D. Mich. May 21, 2020).

*Blackburn v. Noble*, -- F.Supp.3d --, --, 2020 WL 4758358, at **5 (E.D. Ky. Aug. 17, 2020).

For the reasons that follow, Petitioner's claim does not provide him relief. Exhaustion therefore does not preclude consideration of the issue.

### III.     MERITS

a.  Law

The Eighth Amendment requires prison officials to guarantee the safety of and provide adequate medical care to prison inmates. *Blackburn v. Noble*, 479 F.Supp.3d 511, 539 (E.D. Ky. Aug. 17, 2020) (citing *Rhinehart v. Scutt*, 894 F.3d 721, 737 (6th Cir. 2018) (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). "[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general wellbeing." *Helling v. McKinney*, 509 U.S. 25, 32 (1993) (citation omitted). "Deliberate indifference by prison officials to an inmates serious medical needs constitutes 'unnecessary and wanton infliction of pain' in violation of the Eighth Amendment's prohibition against cruel and unusual punishment." *Smith v. DeWine, et al.*, 476 F.Supp.3d 635, 661 (S.D. Ohio Aug. 3, 2020) (citing *Miller v. Calhoun Cnty.*, 408 F.3d 808, 812 (6th Cir. 2005) (citing *Estelle*, 429 U.S. at 104)). "To succeed on an Eighth Amendment claim for deliberate indifference to serious medical needs, a [petitioner] must prove more than mere negligence on behalf of prison authorities." *Blackburn,* 2020 WL 4758358, at *5 (citing *Brooks v. Celeste*, 39 F.3d 125, 127 (6th Cir. 1994); *Estelle,* 429 U.S. at 106. "[A] prison official will be liable only when he or she 'knows of and disregards an excessive risk to inmate health or safety.'" *Id*. (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). The Petitioner must establish both an objective and subjective component in order to obtain relief. *Cameron*, 815 F. App'x at 984.

The objective component requires an inmate to "show that he is incarcerated under conditions posing a substantial risk of serious harm." *Id*. (quoting *Farmer,* 511 U.S. at 833 (citing *Helling v. McKinney*, 509 U.S. 25, 35 22 (1993)). This component plainly has been met.

> This Court agrees with the other district courts across the country [that] have found COVID-19 to be an objectively intolerable risk of harm to prisoners when it enters

8

> a prison. "There is no doubt that infectious diseases generally and COVID-19 specifically can pose a risk of serious and fatal harm to prison inmates." *Valentine v. Collier*, 956 F.3d 797, 802 (5th Cir. 2020); *see also Wilson v. Williams*, No. 4:20-cv-794, —— F.Supp.3d ——, ——, 2020 WL 1940882, at *8, 2020 U.S. Dist. LEXIS 70674, at *19–20 (N.D. Ohio Apr. 22, 2020) (finding petitioners obviously satisfied the objective requirement stating "[a]t this moment a deadly virus is spreading amongst [the prison] population and staff," which can lead to pneumonia, diminished oxygen, organ failure, and death.); *Money,* 453 F.Supp.3d at ——, 2020 WL 1820660 at *18 (noting that that "nobody contests the serious risk that COVID-19 poses to all inmates and prison staff, and even more to the most vulnerable inmates"); *Wilson v. Williams*, 961 F.3d 829, 842 (6th Cir. 2020) (finding a substantial risk of serious harm satisfying the objective element of the Eighth Amendment based on the conditions in an Ohio prison in light of COVID-19).

*Smith v. DeWine*, 476 F.Supp.3d at 662.

The subjective component requires the inmate to show that prison officials knew of and disregarded an excessive risk, thereby acting with deliberate indifference. *Smith v. DeWine,* 476 F.Supp.3d at 661 (citing *Farmer,* 511 U.S. at 834, 837-38). It is "'more blameworthy than negligence,' akin to criminal recklessness[,]" *Cameron,* 815 F. App'x at 984 *(citing Farmer*, 511 U.S. at 835, 839–40), and "'tantamount to [an] intent to punish.'" *Smith v. DeWine*, 476 F.Supp.3d at 661 (citing *Broyles v. Corr. Med. Servs., Inc*., 478 F. App'x 971, 975 (6th Cir. 2012) (quoting *Horn v. Madison Cnty. Fiscal Court*, 22 F.3d 653, 660 (6th Cir. 1994)). Thus, prison officials who know of "a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Wilson*, 961 F.3d at 840 (citing *Farmer*, at 844). The key inquiry is whether prison officials responded reasonably to the risk. *Id.* (citing *Farmer,* 511 U.S. at 844).

b. **Application**

The World Health Organization ("WHO") has declared the novel Coronavirus or COVID-19 a global pandemic. *See Smith v. DeWine*, 476 F.Supp.3d at 643.

> COVID-19 spreads between individuals in close contact through respiratory droplets and possibly through touching an object containing the virus and then

9

> touching one's mouth, nose, or eyes. . . . On March 9, 2020, the Governor acknowledged the presence of COVID-19 as a dangerous situation for the citizens of Ohio and declared a state of emergency. . . . In the following weeks the State of Ohio closed schools, polling stations, childcare facilities, adult daycare facilities, senior centers, restaurants and more, citing a significant risk of substantial harm due to the high probability of widespread exposure to COVID-19.

*Id.* (citations omitted). It is now common knowledge that the virus poses serious risks, particularly for persons with certain health conditions and persons of an older age:

> No one can deny that the health risks caused by the pandemic are grave. Objectively, the health risks posed by COVID-19 are abundantly clear. The novel coronavirus (COVID-19) is a respiratory disease that can result in serious illness or death. It is caused by a new strain of coronavirus not previously identified in humans, and easily spreads from person to person. There is currently no approved vaccine or antiviral treatment for this disease. Dr. Anthony Fauci, director of the National Institute of Allergy and Infectious Diseases, estimated that between 100,000 and 240,000 people in the United States will die from COVID-19 related complications. Michael D. Shear et al., Coronavirus May Kill 100,000 to 240,000 in U.S. Despite Actions, Officials Say, N.Y. Times, Mar. 31, 2020, https://www.nytimes.com/2020/03/31/us/politics/coronavirus-death-toll-united-states.html.
>
> The Centers for Disease Control and Prevention (CDC) have advised that "[p]eople aged 65 years and older" may be at higher risk for severe illness from COVID-19. People Who Are at Higher Risk for Severe Illness, Centers for Disease Control and Prevention (Mar. 31, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html. The CDC also has identified persons with certain medical conditions as being at high risk, including those with "serious heart conditions." *Ibid*. That includes "heart failure, coronary artery disease, congenital heart disease, cardiomyopathies, and pulmonary hypertension." Groups at Higher Risk for Severe Illness, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (last visited May 8, 2020).

*Perez-Perez v. Adducci*, 459 F. Supp. 3d 918, 926–27 (E.D. Mich. 2020). I

Petitioner has not submitted any medical records to support his claim that he suffers from health issues that cause him to be at high risk for serious complications from COVID-19, and he must establish that he is at higher risk for complications from COVID to succeed on his claim. *See Sow v. Adducci*, No. 2:20-CV-2140, 2020 WL 3000425, at *3 (S.D. Ohio June 4, 2020),

10

*report and recommendation adopted*, 2020 WL 3415110 (S.D. Ohio June 22, 2020) (citing *Fofana v. Albence*, No. 20-10869, 2020 WL 1873307, at *10 (E.D. Mich. Apr. 15, 2020) (holding that certain detainees were not likely to succeed on the merits of their deliberate indifference claim because there was no evidence that they suffered from any underlying conditions that placed them at high risk for serious illness from exposure to COVID-19); *Prieto Refunjol*, 461 F.Supp.3d 675, 710 (S.D. Ohio 2020) (denying release based on deliberate indifference claim for infected detainees who were not at high risk of complications from COVID-19).

Regardless, Petitioner cannot, in any event, meet the subjective component required to establish that prison officials have acted with deliberate indifference so as to warrant relief. Limitations imposed on social distancing as a result of the reality of prison life or inadequate mask enforcement by prison guards does not rise to a deliberately indifferent unreasonable failure to act. "[T]he CDC's own guidance 'presupposes that some modification of its social-distancing recommendations will be necessary in institutional settings.'" *Blackburn*, 2020 WL 4758358, at *6 (citing *Swain v. Junior*, 958 F.3d 1081, 1089 (11th Cir. 2020)). Further,

> the fact that COVID-19 has spread among [] inmates does not establish . . . the necessary state of mind to satisfy the subjective deliberate indifference prong as to the safety measures implemented to protect inmates from COVID-19. *See Farmer*, 511 U.S. at 844, 114 S.Ct. 1970 (the fact that "the harm ultimately was not averted" does not demonstrate deliberate indifference); *Wilson*, 961 F.3d at 841 (finding "while the harm imposed by COVID-19 on inmates at Elkton ultimately [is] not averted, the BOP has responded reasonably to the risk and therefore has not been deliberately indifferent to the inmates' Eighth Amendment rights," noting evidence that the BOP took preventative measures, including screening for symptoms, educating staff and inmates about COVID-19, cancelling visitation, quarantining new inmates, implementing regular cleaning, providing disinfectant supplies, providing mask, and engaging in efforts to expand testing "demonstrate the opposite of a disregard of a serious health risk") (internal quotations and citations omitted).

*Id*. at *7 (footnote omitted).

This Court has found that the ODRC has acted reasonably in responding to the COVID-19 pandemic and engaged in "an extensive effort to combat this new disease and protect the prisoners' health and safety." *Smith v. DeWine*, 476 F.Supp.3d at 662-63.

It is clear that the Director was aware of the risk COVID-19 presented based on her statements about the disease and the extensive actions she took in response. The key question is whether the Director "responded reasonably to th[is] risk." *Wilson*, 961 F.3d at 840 (citing *Farmer,* 511 U.S. at 844, 114 S.Ct. 1970). Importantly, the resultant harm, while serious and concerning, does not establish a liable state of mind. *See Swain v. Junior*, 958 F.3d 1081, 1089 (11th Cir. 2020) (finding the district court incorrectly "treated an increase in COVID-19 infections as proof that the defendants deliberately disregarded an intolerable risk"). Putting aside the resultant harm, the evidence shows the Director responded reasonably to the risk.

The Director began preparing for the introduction of COVID-19 into Ohio's prisons before COVID-19 was even confirmed in the United States. (Def. Director Resp. Prelim. Inj. at Ex. A, ¶ 8.) After COVID-19 entered the United States and then Ohio's prison system, the Director continued to coordinate a response among all of ODRC's facilities which included educating staff and inmates, tracking and distributing PPE, implementing social distancing measures among staff and inmates, increasing cleaning and sanitizing, screening visitors, staff, and inmates, cancelling visitation, quarantining those with symptoms, and implementing other policies designed to prevent COVID-19's spread. (See id.) The Sixth Circuit has previously held actions such as these a reasonable response. *See e.g., Wilson*, 961 F.3d at 840 (finding the Bureau of Prisons' response to COVID-19 including screening for symptoms, educating staff and inmates, cancelling visitation, quarantining new inmates, implementing cleaning, providing disinfectant, and more, a reasonable response); *Wooler v. Hickman Cnty.*, 377 F. App'x 502, 506 (6th Cir. 2010) (holding a jail nurse's actions of cleaning every cell, quarantining infected inmates, and distributing information about a bacterial disease precluded a finding of deliberate indifference).

Other courts around the country have also found similar actions taken in response to COVID-19 enough to preclude a finding of deliberate indifference. *See e.g., Valentine*, 956 F.3d at 802 (noting that the prison officials took measures recommended by the CDC and the plaintiffs offered no evidence they subjectively believed those actions were inadequate); *Swain*, 958 F.3d at 1089 (noting that neither the resultant harm in COVID-19 infections or the inability to achieve social distancing constituted a state of mind more blameworthy than negligence); *Money*, 453 F.Supp.3d at ——, 2020 WL 1820660 at *18 (finding the plaintiffs did not have a chance of success on this claim because the prison officials had come forth with a lengthy list of actions they had taken to try and protect inmates from COVID-19 and "the record simply [did] not support any suggestion that [the defendants] ha[d] turned the kind of blind eye and deaf ear to a known problem that would

> indicate 'total unconcern' for the inmates' welfare" (citing *Rosario v. Brawn*, 670 F.3d 816, 821 (7th Cir. 2012))). There is no evidence that the Director subjectively believed her actions were inadequate or that she indicated a total concern for the inmates' welfare.

*Id.*, at 663. The Court takes judicial notice of those findings here.

> "[I]t is well-settled that federal courts may take judicial notice of proceedings in other courts of record." *United States v. Mont*, 723 Fed. Appx. 325, 327 n.3 (6th Cir. 2018) (citing *Lyons v. Stovall*, 188 F.3d 327, 332, n.3 (6th Cir. 1999) (brackets, quotation marks, and citation omitted)). While this doctrine typically does not extend to the factual findings of another court, notice may be taken of "proceedings in other courts . . . if those proceedings have a direct relation to matters at issue." *United States v. Neal*, 577 Fed. Appx. 434, 452 n. 11 (6th Cir. 2014) (quoting *United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) (ellipsis and emphasis in original)).

*Schneider v. Credit Human Federal Credit Union*, No. 4:20-cv-1747, 2021 WL 147050, at *1 n. 2 (N.D. Ohio Jan. 15, 2021).

Because Petitioner cannot establish that prison officials acted with deliberate indifference, he cannot establish a basis for relief.

## IV. DISPOSITION

For the foregoing reasons it is **RECOMMENDED** that this action be **DISMISSED.**

## PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

**IT IS SO ORDERED**.

                                               _s/ *Elizabeth A. Preston Deavers*_
                                               ELIZABETH A. PRESTON DEAVERS
                                               UNITED STATES MAGISTRATE JUDGE